The next matter, No. 24-1686 and No. 25-1026, Aldanier Pereira Alves et al. v. Todd Blanche. At this time, would counsel for the petitioners please come to the podium and introduce themselves on the record to begin? Good morning, Your Honors. Randy Olin for the petitioners, who applied for asylum and related relief based on their membership in the particular social group. Are you going to reserve any minutes for rebuttal? I'm sorry, Your Honor. Yes. May I have two minutes for rebuttal?  Thank you. Continue. Membership in the Alves-Barros family, the agency acknowledged that the particular social group was cognizable and that the nexus requirement had been met, but denied the applications because it found no past persecution and no well-founded future persecution. Now the dissenting board member would have remanded this case back to the IJ for two different reasons. The first is that it found that the IJ had made an internal relocation finding that was contrary to law. The regulations provide that asylum may be denied if it is demonstrated that a person can internally relocate safely and that it is reasonable to do so. That's the two-step analysis. Is there a safe place? Is it reasonable for them to really relocate? If there's no past persecution, then the burden is on the applicant to show that it would be unreasonable. But if the persecution is by the government or government-sponsored, as it was in this case, then there is a presumption that applies, that relocation would not be reasonable. What the immigration judge in this case did is made this finding. Before you get to the burden, you've got to establish, you have to contend with the BIA's determination that this didn't have anything to do with relocation. Can you address that first? Yes. That's fine. Let me give you the IJ's quote. It's pretty simple. The IJ said in making this finding that they could essentially avoid the mistreatment if they had just not visited the mother's house or perhaps relocated to another part of Brazil. I don't know how the, well, I do know why the board and the government are taking that position. Excuse me. I don't know how they can do so when the plain language uses the words internal relocation. Can you deal with the first part of the IJ's, that sentence that you just read from the IJ? Stay away from the mother's house. That is another internal relocation finding. Actually there are two internal relocation findings. One is they can go to another part of Brazil. The other is to go away from their mother's house, but that's relocating. Where would they have to, if they're leaving their mother's house, they'd have to relocate to somewhere else. Is the mother deceased? I'm sorry? Is the mother deceased? She is now. Do we know who the home is owned by? No, that's not in the record, Judge. I guess what I'm wondering is why is it relocation if it's simply not visiting the home of somebody who's no longer resident there? Well, we don't know who's the resident there. I mean, that's not in the record, so it's, I mean, we'd be guessing as to answer the  But we do know that the mother's not there. Yes. Yes. But the more important part is the judge's finding on the record in plain language that they could relocate to another part of Brazil. The reason, Judge Howard, that the board took the position that it wasn't a finding and that the government also agrees is because if we acknowledge that this is a finding of internal relocation, which the plain language I believe establishes that it is, there is no possible argument that the decision needs to be vacated because it's clearly contrary to law. You can't make that determination and just ignore the presumption, which is what the agency did. In addition, the board was even more explicit in what they said about this. They specifically said, the respondents have not established that avoiding the home of the mother upon the return to Brazil would be unreasonable. Putting the burden on the respondent, on the petitioners to show that it would not be unreasonable when the presumption that applies says it's not reasonable. So they not only ignored the presumption, but they turned the burden of proof on its head. I think it's a remarkable position for the government and the board to take in light of the plain language of the IJ. Another aspect of this is the matter of MZMR established a principle that the purpose of the relocation rule is not to stay one step ahead of the persecution. There has to be a substantial difference in the place to where relocation would take place and it has to be substantially better than the place giving rise to the original claim. It would be hard, I think, to imagine the place where the agency supposed they would go, they lived, their home was 15 minutes away from the mother's home. So it would be hard to imagine a better example of only staying one step ahead of the persecution than to say that, just go 15 minutes away from the site. The record shows that there were no visits to her home 15 minutes away. It was all visits to the mother's home. So how is that a speculative breach when the record suggests that there had been no visits to the home? Because there was no reason for them to visit the home. Because the family often gathered, the entire family together, gathered at the mother's  That was their meeting place. That's where they all met together and that's where it took place. Do we really believe that the military police officers wouldn't travel 15 minutes if they needed to? But they didn't need to. There was no need to do that because the locust was at the mother's home at that time. And by the way, for what it's worth, the dictionary definition of relocation is the act or process of moving to a different place. Removal and establishment of a new place. You at this point have somewhat limited time. I am quite interested in your mixed motive argument and whether there should be a remand. As I know you are aware, our court has for the last several years issued a number of opinions involving the family as a social group and how does that get confounded with mixed motive. And so could you turn to that? Well, I think, Judge, for what you are asking me, the importance of the internal relocation issue is because the well-founded fear decision cannot stand with that error. The internal relocation issue is fatal to the Assume for a second that you lose on that point. Could you move on to the other argument? If by the other argument, Judge, you mean the second reason why the board member dissented, which was that he found that there was sufficient similarity between the denial, between the grant of the sister's asylum application, Pollyanna's grant of asylum, and the circumstances of these petitioners' case enough to warrant a remand. I think the record is clear that that makes perfect sense because the persecutors were the same people, they did the exact same things to all of the family members, including the petitioners, the same as what they did to the sister who was granted asylum. Two weeks after it was denied, it was the same immigration judge on virtually the same evidence denied these petitioners' asylum application while granting the sisters. The only difference... Did D.I.J. and the board distinguish the sister's facts from your client's facts? Because that was pretty explicit. The sister, Pollyanna, she was arrested, detained, resisted the officers unlike petitioner. Right. But that's the only difference, Your Honor. That's the only difference that we can see in the record between the treatment that was afforded Christiana and the other petitioners and the treatment that Pollyanna... So you're saying just because of that difference, they should be treated the same by the immigration? All the other things were the same. Same persecutors, same conduct, everything was the same except for that one brief arrest when she attempted to stop the military police officers from entering the house without a  What do we have in the record as to the basis for the decision regarding her sister? Is it just speculation as to what the basis was? Was there anything introduced into the record here as to... The only thing that was in the record below, Judge Dunlap, was a form order, which showed that Pollyanna had been granted. But obviously, the dissenting judge found there to be enough similarity in the facts that we have discussed to warrant further investigation. And I think he had the better of it. They should have sent it back. That's what they're asking for, a remand. They could have resolved this issue with a remand. If I can just for a moment speak to the well-founded fear aspect of this. The internal relocation issue is indispensable to a proper determination of well-founded fear. If he can relocate safely and it's reasonable to do so, then asylum would be denied. But the government has made a number of errors in its well-founded fear decision. It's characterized the conduct of the military police officers as generalized crime. That's clearly a transparent attempt to take the government out of it as the perpetrator. The precatize, I may be not pronouncing that case properly. The board also said that there was limited and indirect harm to these petitioners. As if the persecution of the entire family was not directed at them. Now, it is true that these petitioners were not beaten like their brother was, not arrested like the sister was. But the precatize case is very important because in that case, the petitioner's children were harmed. It wasn't taken into account. And this court said that, pardon me, I just want to get my train of thought, that the harm would accrue to these petitioners if persecution was undertaken in a way to harm the petitioner. And that's exactly what this record reveals. That the harm that was directed to all the other family members was done so and the record is replete with evidence that, and the board, by the way, the board and the agency acknowledged that this was done to send a message, just as it was in the precatize case, to send a message to these petitioners that families of gang members and criminals are going to be punished, whether they have any liability for any misconduct or not. With respect to one other aspect of it, Your Honor, is to the decision about past persecution. Now, it's true, as I said, that the petitioners were not beaten as the other family members were. May I finish this off?  Thank you. Again, the conduct at issue that was directed to the petitioners included false arrest, repeated beatings, false imprisonment, verbal abuse, destruction of property, all of that accrues to these petitioners. Okay. Thank you.  Counsel, for the respondent, please introduce yourself on the record to begin. Anthony Nardi on behalf of the Attorney General. Your Honors, good morning. May it please the Court. I'm happy to answer any preliminary questions the Court has at the outset. Otherwise, I'd like to turn to two of the main issues that Judge Howard was discussing in a colloquy with my friend. First, with respect to internal relocation, so the language that my friend cites to page 171 of the record or page 8 of the IJ's decision, first, perhaps relocated to another part of Brazil, that's in the past persecution finding portion of the IJ's decision, and internal relocation is not an element of that finding. Moreover, the other language on page 10, or sorry, page 9 of the IJ's decision, that's referring to generally the IJ's determination that this is all evidence of the fact that petitioners were not the target of these two police officers. In fact, it was a petitioner testified the target was her mother's house because of their belief there was criminal activity taking place there. That's page 319 of the record. Again, here, I think the two majority members of the Board got it right that, yes, this is not an actual internal relocation finding. Moreover, even if the Court disagrees and finds that the IJ did make that internal relocation finding, the Board did not rely upon the internal relocation finding. They specifically stated they were relying only on the likelihood of well-founded fear of future persecution, and then cited Bagham Asbad saying they were not affirming any of the other elements of the IJ's decision. Second, turning to the remand, the denial of the remand based off Pollyanna's introduced form order, again, I don't think the Board or the agency abuses discretion when in a motion to reopen, which is how the Board analyzes a motion to remand, the same standard applies, where the only evidence in the record is a single form order that does not have any information about the grounds upon which the IJ relied on to grant asylum in that other case, and also contains no information about the evidence that was presented in that other case that could have differed. Let me ask you, Counsel, I don't think there is, confirm me if I'm right, there's nothing that mandates if you grant asylum to one person, you have several family members, you don't have to grant to all, it's an individual decision, correct? Correct, Your Honor. But I think even going further here, I don't think the Court needs to go that far to say that even if there are two individual identical cases, a grant in one case does not impact a grant in another case, because here, at the end of the day, the burden was on petitioners to demonstrate that other evidence that was presented in Pollyanna's case, which resulted in a grant there, none of that information was presented to the agency here in Petitioner's  I think that's the key distinction. And the distinction here, as I point out to the Counsel, Pollyanna was arrested, she resisted, she was detained, so had this petitioner resisted, perhaps, her being arrested or detained even briefly, it might have been different, but that's the distinction that's made, correct? Your Honor, I would agree with those. I would add two other points. First, the petitioners here testified that they never lived in their mother's house during from 2013 to 2020, the period in which the police were showing up. Additionally, that implicates the 10 other times that petitioners would not have been present when the police showed up. And then lastly, I would just say this is Petitioner's prior counsel before the agency had succeeded in consolidating all three family units into one case, so that was Petitioner's prior counsel here, Pollyanna and her minor child, and then Robson's case. However, before the IJ, Petitioner's prior counsel then agreed to sever the cases based off some dissimilarities between the cases or what might come out during the hearings. That's in the record. Unfortunately, we don't have any more fulsome discussion of those dissimilarities picked apart by the IJ or Petitioner's counsel before the agency, but that's some evidence that, yes, there were even more dissimilarities than the ones that came out explicitly in the testimony, only in Petitioner's case. But acknowledging that it's the burden of the Petitioner to come forward with the evidence, I thought the hearing and decision in this case preceded the other one. Correct, Your Honor. Pollyanna was... So they couldn't have brought it in front of the IJ. Is there a mechanism for them to bring it in front of the BIA on appeal? So Your Honor, the IJ actually discussed this with Petitioner's prior counsel that Pollyanna could have testified in their case as well. The IJ did not limit the scope of what evidence could be presented, so the Board was right to say that that evidence could have been presented there, and then additionally, yes, in the same way that the Board treated the form remand order as a motion to reopen. There was not evidence in front of the IJ that the Petitioners here witnessed the police conduct with respect to the sister? There is evidence, and they testified to that fact, yes. However, the IJ specifically made a finding that those harms did not rise to the level of persecution, for past persecution, and then primarily based off the fact that Petitioners were able to stay in Brazil from February 2020, which is when they say was the last time the police showed up at their mother's house, until they left Brazil in October of 2021. That entire time, they were never threatened or approached by either of the two individualized police officers who were mentioned or anyone from the police in Brazil, and as this Court has noted, that even a six-month gap in, you know, being in the same country with your persecutors and they do not approach you, casts doubt on a likelihood of future for persecution on here. Even taking Petitioners' argument that they would be the only member of the family not in prison in Brazil when they returned, they were in that same situation after Robson left Brazil to come to the United States earlier in 2021 for about a six-month period. So again, that leads to the same conclusion. They were not the actual target of the police. In fact, the police were targeting their mother's house because of the criminal activity for brother Jai Durbs in prison now for attempted homicide as a gang member, and then her other brother who was arrested for drug trafficking. But if the Court has no further questions. Let me ask you one question, because here there's the determination there's no past persecution as to her, but can you argue there's future persecution if there hasn't been any past persecution? Yes, Your Honor, you're able to, it is a not required to demonstrate past persecution in order to demonstrate a well-founded fear. Those are separate parts of the analysis. But what your argument is that based on the particular facts as to Ms. Pereira, that's why there's no future persecution. No, the reason why there's no future persecution here in this case is because the only people she has alleged would persecute her in the future, she was present in the country for a bunch. Yeah, for that gap you said. Yes. And I think this Court has held in numerous cases that that sufficiently diminishes the likelihood of future persecution when you're able to stay in the same country as your persecutors and they do not harm you. And even if we disagree with the IJ, it's under a starting review, that's, so it's got to be, you know, the petition's got to be denied, can you review it correct? Correct, Your Honor, because the record does not compel the conclusion that petitioners put forward. Yes. Any further questions? Yes. I understood that the petitioners argued to the IJ and also to the BIA that they were persecuted or, we can go further, that they have a well-founded fear of persecution based on their family connections, their family status. And they continue to make that argument in their briefs, never addressed by the BIA. So, what do we do with that? Well, Your Honor, I think that the Board expressly noted that there were two elements they were affirming from the IJ's decision that were dispositive of the claim. That's the past harm not rising to the level, which is independently dispositive of the past harm analysis, and then the likelihood of future persecution, they didn't reach the nexus or protected ground element. So, because those were independently dispositive, the agency was not required to reach those other elements that the IJ discussed. Okay. Thank you, counsel. Thank you. Two minutes for rebuttal. Mr. Olin? Yes. Please reintroduce yourself on the record to begin. Randy Olin. For the petitioners. Judge, help me. There is, of course, no guarantee that every case must be decided on individually, and there's no guarantee that this application would be granted. But the point is, and the dissenting judge made it clear, that the principle is that similarly situated people must be treated similarly, and there are a number of cases in the brief that confirm that. The dissenting judge thought that there was enough reason to do that, and that is precisely why a remand would have been required. Upon remand, they could compare the cases, which they couldn't do with the forum order, but if they had remanded the case, they could have given consideration to the fact that these people were similarly situated and dealt with the issue of one being denied and two weeks later, one being granted. The other thing I wanted to point out, Judge. Well, are the records of the IJ proceedings with respect to the sister available to us? I'm sure that the, I'm sure that, do you mean the transcript, Judge? Yeah. I'm sure that could be obtained for sure. Yeah. Finally, with respect to the errors in the well-founded fear, and I don't see how the internal relocation issue does not affect the well-founded fear. I mean, it's indispensable to the well-founded fear determination, whether or not internal relocation was decided properly. But there were also other mistakes, other errors that the board made in the well-founded fear consideration. One is that the motive of the military police officer to go to the house was to ferret out crime. Well, that's pretextual. In the seven or eight years that this was going on, no crime was ever discovered at the home. So my time is up. Okay. Thank you, Counsel. Thank you. Thank you, Counsel. That concludes argument in this case.